**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

NIGEL FREDERICKS,

                                        Plaintiff,                           9:17-cv-00015 (BKS/DJS)

v.

B. BORDEN,

                                        Defendant.

---

**Appearances:**

*For Plaintiff:*
Erik T. Koons
Baker Botts L.L.P.
700 K St. NW
Washington, DC 20001

Angela L. Brown
Baker Botts L.L.P.
30 Rockefeller Plaza
New York, NY 10010

William C. Lavery
Dorothea R. Allocca
Clifford Chance US L.L.P.
2001 K Street NW
Washington, DC 20006


*For Defendant:*
Letitia James
New York State Attorney General
Ryan W. Hickey
Brittany M. Haner
Assistant Attorneys General
The Capitol
Albany, NY 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff Nigel Fredericks brings this action under 42 U.S.C. § 1983 against Defendant B. Borden asserting violations stemming from an alleged use of excessive force when Plaintiff was incarcerated at Franklin Correctional Facility (the "Facility"). (Dkt. No. 38, at 1, 4).[1] The operative complaint, Plaintiff's Second Amended Complaint, contains one surviving cause of action for excessive force in violation of the Eighth Amendment against Defendant Borden. (*Id.* at 9). Presently before the Court is Plaintiff's motion (1) for sanctions, granting default judgment pursuant to Federal Rules of Civil Procedure 37(b)(2)(A)(vi) and 37(c)(1)(C) or, alternatively, granting adverse inference instructions in favor of Plaintiff; (2) granting Plaintiff's request to re-open discovery, and (3) awarding Plaintiff expenses incurred related to the trial that was adjourned, pursuant to Federal Rules of Civil Procedure 37(b)(2)(C) and 37(c)(1)(a). (Dkt. No. 183). The motion is fully briefed by both parties, (Dkt. Nos. 183-1, 185-6, 186), and the Court held oral argument on October 16, 2024. For the reasons that follow, Plaintiff's motion for sanctions is granted in part and denied in part.

## II.    FACTS

This motion concerns Defendant's production, shortly before trial, of the Facility's logbook pages documenting events on July 12, 2015. Plaintiff claims that Defendant's failure to disclose logbook evidence from July 12, 2015 was a violation of the Court's Mandatory Pretrial Discovery and Scheduling Order ("MDSO"). (Dkt. No. 183-1, at 5). Plaintiff alleges that he

---

[1] The Second Amended Complaint contains several paragraphs bearing the same number. The Court instead cites to the Second Amended Complaint by reference to the page numbers generated by the Court's CM/ECF system.

amended his complaint because Defendant disclosed logbook pages for July 11, 2015, and July 13, 2015, but not July 12, 2015. (*Id.* at 7). Plaintiff claims Defendant's failure to disclose the July 12 logbook pages has "materially impacted the record," and that he has suffered significant prejudice because of this omission. (*Id.* at 10). At oral argument Plaintiff's counsel clarified that the logbook at issue is the SHU logbook for July 12.

The facts of Plaintiff's initial grievance, his first Complaint, his Amended Complaint, Defendant's disclosures, Defendant's motion for Summary Judgment, and Plaintiff's counsel's pre-trial investigation are all relevant to this motion. The Court will address each in turn.

### A.    Plaintiff's Grievance

On August 6, 2015, Plaintiff filed a grievance with the Facility's Inmate Grievance Program ("IGP") alleging that Defendant assaulted him on July 12, 2015. (Dkt. No. 185-2, at 7). Plaintiff alleged that on July 7, 2015 he told a sergeant at the Facility that he feared for his life because members of a gang had "put a hit out on [him]." (*Id.*). The Sergeant told Plaintiff that he would "write [him] a ticket" for refusing to go back to his housing area, but also told Plaintiff that he should explain this all to the lieutenant overseeing the disciplinary hearing. (*Id.*). Plaintiff alleges that at the hearing on July 11, 2015, the lieutenant said that he would give Plaintiff fifteen days keeplock and that voluntary protective custody would be needed. (*Id.* at 7-8). The logbook for July 11, 2015, indicates that Plaintiff was out for a "Tier hearing" on that day. (Dkt. No. 183-7 at 8). The grievance packet includes a "Voluntary Protective Custody Status Consideration Form," indicating that Plaintiff sought protective custody on July 11, 2015; the corrections official who interviewed Plaintiff recommended protective custody on July 15, 2015; and the Superintendent determined that he should be assigned to protective custody on July 16, 2015. (Dkt. No. 185-2, at 13).

3

Plaintiff alleged that on July 12, 2015, "an officer came to [his] cell" in the Solitary

Housing Unit ("SHU"), "and told [Plaintiff] to pack all [his] stuff up because [he's] leaving." (*Id.*

at 8). Plaintiff wrote, "I do not know none of these officer's names but I'm a 100% sure if you

check them log books on all the dates I'm giving you you would know what officer I'm talking

about." (*Id.*). The officer took Plaintiff out of his cell in handcuffs and to the "frisk/property

room." (*Id.*). The officer told Plaintiff he was "going back to population H-2 Dorm." (*Id.*)

Plaintiff alleged that he tried to explain to the officer that he could not go back to H-2, and that

the lieutenant had signed him into voluntary protective custody. (*Id.* at 8-9). Plaintiff then alleged

that the officer walked up to him, beat him, told him he didn't care if he died, and used a racial

slur. (*Id.* at 9). Then, Plaintiff alleged that the officer took off the handcuffs and pushed him "out

of the SHU Door and shut it closed." (*Id.*). Plaintiff stated that when he got to the H-2 dorm he

was scared for his life and told the officer he felt like hurting himself. (*Id.*).

IGP investigated the grievance and obtained a statement from Defendant. (Dkt. No. 185-

2, at 16, 18-19). The grievance packet notes that Defendant "did work on that date in SHU." (*Id.*

at 16). The grievance packet also includes a "Grievance Response" from Defendant denying all

of Plaintiff's allegations. (*Id.* at 18-19). The superintendent found the grievance to be without

merit and denied it on August 31, 2024. (*Id.* at 15).

Plaintiff appealed to the Central Office Review Committee (CORC) on September 20,

2015. (*Id.* at 58). In his appeal, Plaintiff argued that he didn't have any witnesses "because it

happen [sic] inside the small S.H.U. frisk/property room were nobody could be seen or heard at."

CORC upheld the determination of the superintendent for the reasons stated in the original

denial. (*Id.* at 42). CORC noted that "Officer Bo. . . denies assaulting or verbally harassing the

grievant on 7/12/2015. (*Id.*). CORC noted that Plaintiff was out of the facility from 7/15/15 to

7/23/15 and was placed in VPC [Voluntary Protective Status] from 7/27/15 to 8/16/15. (*Id.*)

CORC determined that "[Plaintiff's] concerns have been appropriately addressed" and that he

had since been transferred. (*Id.*).

### B.    Plaintiff's First Complaint

Plaintiff filed his first complaint on January 5, 2017. (Dkt. 1). In this complaint, Plaintiff

alleged that a lieutenant signed him into protective custody on July 11, 2015. (*Id.* at 5, 13).

Plaintiff reiterated his claim that on July 12, 2015, Defendant used excessive force when he took

Plaintiff out of the SHU and into the "frisk/property room," including that he "beat on" Plaintiff.

(Dkt. No. 1, at 5). He claimed there were no witnesses, because "no one can see or hear

anything" where the incident took place. (*Id.*). Plaintiff claimed that he was "back in population"

on the morning of July 12, 2015. (*Id.* at 6, 11).

### C.    Plaintiff's First Amended Complaint

Plaintiff filed an amended complaint on March 20, 2017. (Dkt. No. 11). Again, Plaintiff

alleged that "on July 12, 2015, Correction Officer B. Borden came to [Plaintiff's] cell . . . in

solitary confinement and told [him] to pack up" and that he was leaving. (*Id.* at ¶ 22). He

repeated that he was "kick [sic] out of protective custody" on July 12, 2015, and "back in

population" on the morning of July 12, 2015. (*Id.* at ¶ 27, 33). He also alleged that "prior to 7-

12-15" a female officer asked what happened to his face, (*id.* at ¶ 28), and "prior to that occasion

on 7-12-15" he was given a pass to emergency dental, (*id.* at ¶ 29).

Plaintiff attached a letter to the Superintendent to his amended complaint, dated July 24,

2015. (Dkt. No. 11-1, at 4). In this letter, Plaintiff tells the Superintendent that "an officer that

works in solitary in solitary confinement [sic] assaulted me and place [sic] me back into

population on 7-12-15." (*Id.*).

**D.    Initial Disclosures**

On July 14, 2017, Magistrate Judge Stewart issued a Mandatory Pretrial Discovery and Scheduling Order ("MDSO"). (Dkt. No. 23). This order required Defendants to "provide to Plaintiff copies of all documents and other materials in the care, custody, or control of any defendant or the defendant's employer . . . related to the claims or defenses in the case." (*Id.* at 2).

On September 12, 2017, Defendant notified the Court that he had satisfied his mandatory pretrial disclosure obligations and attached a Declaration of Service indicating that he served "Defendant's mandatory pretrial disclosures bates stamped DEF001-DEF0291" on Plaintiff by mail. (Dkt. Nos. 28, 28-1). Discovery closed on August 31, 2018. (Dkt. No. 44). According to Defendant, Plaintiff never served him with discovery demands "or made any requests for Defendant's production of log book pages." (Dkt. No. 185-6, at 9).

Plaintiff argues that Defendant produced logbook records as part of its mandatory disclosures, but that these logbook pages "mysteriously omitted the pages for July 12, 2015 – the day Mr. Fredericks consistently alleged throughout the inmate grievance process and his original and first amended complaints in this case." (Dkt. No. 183-1, at 7). Plaintiff's counsel has attached to the instant motion a "true and correct copy of the relevant excerpts of the Mandatory Disclosures produced by the Defendant in this action." (Dkt. No. 183-2, at ¶ 3). In those disclosures, at "DEF0050" and "DEF0051," there are SHU logbook records from July 11, 2015 and July 13, 2015 – but July 12, 2015 is missing. (Dkt. No. 183-3, at 20-21). Defendant did not address this in his opposition, and defense counsel was unprepared to address this at oral argument. The proof of service for the mandatory pretrial disclosures states that documents bates stamped DEF001-DEF0291 were served on Plaintiff on September 12, 2017. (Dkt. No. 185-1).

### E.    Plaintiff's Motion to Amend His Complaint

Plaintiff filed a motion to amend his complaint on October 12, 2017. (Dkt. No. 29). The proposed amended complaint changes the date of the alleged excessive force to "on July 13, 2015." (Dkt. 29-1. at ¶ 26). Plaintiff alleges that he was removed from protective custody on "7-13-15," (*Id.* at ¶ 30), and that he was "back in population on 7-13-2015" in the "afternoon," (*Id.* at ¶ 36). He claims that "prior to 7-13-15 when [he] arrived to the H-2 Dorm" a female officer "noticed [his] face," (*id.* at ¶ 31), and that he was given an emergency dental pass on July 14, 2015 instead of the 13th, (*id.* at ¶ 32). Plaintiff also crossed out "morning" to write "afternoon" to refer to the time of day he was back in "population." (*Id.* at ¶ 36).

### F.    Deposition

Defendant's counsel deposed Plaintiff for the first time on December 28, 2017. (Dkt. No. 47-7, at 1). Defendant's counsel asked Plaintiff:

Q:    So as I understand it, your claims arise from an incident that occurred in the strip property room at Franklin, in or around July 12th, 2015, is that right?

A:    July – July – yeah. Around that time. Yes.

(Dkt. No 47-7, at 27). During the deposition Plaintiff stated that after the lieutenant at the disciplinary hearing "assigned" Plaintiff into VPC, it was "[a] day or two later, I'm not exactly sure, it was the next day or after" that Defendant came to his cell and the alleged assault occurred (*Id.* at 28). Later, Plaintiff engaged in the following exchange with Defendant's counsel:

Q:    So, from what I understand, from what you've told me and what's in your complaint, it sounds like C.O. Borden came to you that day, sort of out of the blue, is that right?

A:    Yes. Not the same day though. It was like the next day, or the day after, miss.

Q:    The day after what?

7

A:      The -- the next -- like it wasn't the 12th. It was -- that's -- that's the day I got

assigned to protective custody, right.

Q:      Okay.

A:      It was the 11th or the 12th. He came either the next day, or -- or the 13th, miss.

Q:      Okay.

A:      Either one of them days. And he came to my cell, told me to pack my stuff, I'm

leaving.

Q:      So, he came to your cell the day after you were signed into protective --

A:      Yes.

Q:      -- protective custody?

A:      Yes.

(Dkt. No. 47-7, 43–44).

### G.    Plaintiff's Second Amended Complaint

Plaintiff initially filed a Second Amended Complaint on February 12, 2018, which

changed the dates of his alleged assault to "on July 12, 2015," (Dkt. No. 35, at ¶ 14), "on 7-12-

15," (*id.* at ¶ 18), "prior to July 12, 2015," (*id.* at ¶ 15), and "prior to that occasion with C.O.

Borden on July 12, 2015," (*id.* at ¶ 16). But Plaintiff followed that submission with another

revised complaint to replace it and asked the Court to disregard his previous submission. (Dkt.

Nos. 36, 36-1). This is the operative Second Amended Complaint. (Dkt. No. 38). The Second

Amended Complaint alleges that Defendant used excessive force "on or about July 13, 2015,"

(*id.* at ¶ 16), "prior to July 13, 2015," (*id.* at ¶ 17), "prior to that occasion on July 13, 2015, (*id.* at

¶ 18), and "prior to July 13, 2015," (*id.* at ¶ 19). Plaintiff also says that he was released from

VPC "prior to that situation on July 13, 2015." (*Id.* at ¶ 22).

8

In a declaration filed in support of the instant motion, Plaintiff states that he changed the date "from July 12, 2015 to 'on or about July 13, 2015,' 'prior to July 13, 2015, 'prior to the incident on July 13, 2015,' and 'prior to July 13, 2015' because the discovery showed logbook pages from July 11 and 13, 2015," and he was "not sure of the date." (Dkt. No. 183-4 at ¶ 6). Plaintiff asserts that "[b]ut for the Defendant's incomplete production of the log books [he] would not have amended [his] complaint to change the description of when these events occurred." (*Id.* at ¶ 7).

### H.    Summary Judgment

On November 1, 2018, Defendant moved for Summary Judgment. (Dkt. No. 47). In his memorandum of law in support of summary judgment, Defendant argued that "Plaintiff alleges that he was assaulted by Defendant Borden on the date that he was transferred from SHU to general population at Franklin on July 13, 2015." (Dkt. No. 47-1, at 8). In a footnote, Defendant stated the following concerning a discrepancy between dates:

> There initially appeared to be some confusion around the date on which Plaintiff was transferred and, thus, the date on which the alleged assault occurred, as Plaintiff initially alleged that such assault took place on July 11, 2015,[2] see Dkt. No. 1, or July 12, 2015, see Dkt. No. 11. See also Declaration of Helena O. Pederson ("Pederson Dec."), Exhibit A. Plaintiff corrected the date in his Second Amended Complaint to July 13, 2015.[3] Dkt. No. 38, ¶¶ 16-20. Additionally, facility log books from that time period confirm that

---

[2] The Court notes that this statement is inaccurate; Plaintiff never claimed he was assaulted on July 11, 2015.

[3] This statement is also inaccurate; in Plaintiff's Second Amended Complaint, (Dkt. No. 38), he alleges that Defendant used excessive force "on or about July 13, 2015," (*id.* at ¶ 16), "prior to July 13, 2015," (*id.* at ¶ 17), "prior to that occasion on July 13, 2015, (*id.* at ¶ 18), and "prior to July 13, 2015," (*id.* at ¶ 19). Plaintiff also says that he was released from VPC "prior to that situation on July 13, 2015." (*Id.* at ¶ 22).

> Plaintiff was transferred from SHU to general population on July 13, 2015. See Pederson
>
> Dec., Exhibit C.

(*Id.* at n. 2). Defense counsel submitted an affidavit in support of the motion attaching a

"certified copy of the pertinent portion of log book records from July 13, 2015[.]" (Dkt. Nos. 47-

4, ¶ 6, 47-6). The logbooks, which include DEF0051, reflect that Plaintiff was transferred to H-2,

i.e. general population, on July 13, 2015. (Dkt. No. 47-6, at 4). Defendant's sole defense in the

summary judgment motion was that he "was not working at Franklin (or at all) on July 13, 2015,

as he was on a Regular Day Off ("RDO") on that date." (Dkt. No. 47-1, at 8).

On August 6, 2019, Magistrate Judge Stewart issued a Report-Recommendation

recommending that Defendant's motion for Summary Judgment on Plaintiff's excessive use of

force claim against Defendant B. Borden be denied. (Dkt. No 71). The court noted that Plaintiff

indicated during his deposition he was "quite sure" Officer Borden was the one who assaulted

him, and "[c]ontemporaneous investigation of Plaintiff's grievance regarding the assault also

suggests that a factual question exists as to whether Officer Borden was present at Franklin on

the day in question." (*Id.* at 6). "Borden provided a written statement which denied the

substantive allegations in the grievance, but did not state that he was not working on the day in

question." (*Id.* at 7). The court concluded that "Plaintiff's deposition testimony and the grievance

records raise a factual question regarding whether Officer Borden was present on the day of the

alleged assault." (*Id.*). United States District Court Judge David N. Hurd adopted Magistrate

Judge Stewart's Report-Recommendation (Dkt. No. 78).

### I.   Discovery Requested by Pro Bono Counsel

Plaintiff represented himself *pro se* until the Court assigned Plaintiff *pro bono* trial

counsel on January 26, 2023. (Dkt. No. 126). On April 21, 2023, Plaintiff's counsel reached out

to defense counsel and inquired about obtaining "discovery and other materials potentially

relevant to the case." (Dkt. No. 183-5 at 6-7). On May 5, 2023, Plaintiff's counsel provided a list

of "discovery items that we believe may exist." (*Id.* at 5). On that list was a request for "officer

shift documentation for 7/12 and 7/13"; "[a]ny documents reflecting [Plaintiff]'s whereabouts on

7/12," and [a]ny documents reflecting the statement . . . from Officer Borden stating that 'he did

work on that date in SHU,'" among other documents. (*Id.* at 5). Defense counsel replied on May

8, 2023, "I am tight on time, but attached are the Mandatory Disclosures served on Plaintiff."

(*Id.*).

On May 22, 2023, Plaintiff's counsel replied and requested the "administrative record"

relating to Plaintiff's "grievance/allegations" against Defendant, including the record before the

investigating sergeant – specifically, statements from Defendant that he worked on July 12, 2015

in the SHU. (*See id.* at 4) (citing Dkt. No. 47-5, at 16). Defense counsel replied that she had

"given [Plaintiff's counsel] everything that was disclosed in discovery." (*Id.*). Plaintiff argues

that "Plaintiff's counsel reasonably interpreted this response as representing that Defendant

produced all the documents required under the Mandatory Discovery Order and assumed that the

291 pages disclosed were the only relevant materials in the Defendant's possession." (Dkt. No.

183-1, at 9).

### J.    Defendant's Inclusion of the July 12, 2015 SHU Logbook as a Trial Exhibit

Trial was originally scheduled for February 26, 2024. (Dkt. No. 137). On February 9,

2024, Defendant filed an exhibit list, which included as an exhibit the SHU logbook pages for

July 12 and July 13, 2015. (Dkt. No. 148, at 6, Exhibit D-23).

### K.    Defendant's Production of the July 12, 2015 Logbooks

Judge Hurd rescheduled the trial, (Dkt. No. 160), and this case was later reassigned to the

undersigned who scheduled trial for July 30, 2024, (Dkt. No. 167). On July 22, 2024,

Defendant's counsel provided Plaintiff's counsel with copies of Defendant's planned trial

exhibits. (Dkt. No. 183-6, at 2). Among these were Defendant's Trial Exhibits 16 and 17 – which contained the SHU and Watch Commander logbook records, including the SHU logbook for July 12, 2015. (Dkt. Nos. 183-2, at ¶¶ 7-8; 183-7; 183-8).

In an email correspondence between counsel, on July 25, 2024, Defense counsel acknowledged that the July 12, 2015 SHU logbook in Trial Exhibit 16 was "not disclosed" in the mandatory disclosures. (Dkt. No. 183-9, at 2). The July 12, 2015 SHU logbook reflects that Defendant was working in SHU and worked in the frisk room that day. (Dkt. No. 183-7, at 11-13).  In a declaration filed in opposition to the instant motion, the AAG assigned to this case for trial states that she "provided the logbook pages that were contained in defendant's file for this case" and was "under the belief that those records consisted of the same pages that had previously been provided to plaintiff as part of defendant's mandatory disclosures." (Dkt. No. 185, ¶ 28). Defense counsel states that she first became aware of the fact that "the July 12, 2015 SHU logbook entries had not been included as part of the Mandatory Disclosures that were provided to Plaintiff by the AAG" formerly assigned to the case when Plaintiff's counsel alerted her to this fact. (Dkt. No. 185, ¶ 29).

With respect to the SHU logbook for July 12, 2015, defense counsel stated that "page 9 has no relevant info on it and pages 10-12 reflect that Borden worked in the SHU that day—Borden . . . has never disputed that fact. We don't see the regretful late disclosure as problematic, since these pages do not contain any information that proves or disproves any material fact in the case." (Dkt. No. 183-9, at 2). Defense counsel continued, "I understand how the prior AAG assigned to this file made relevance determinations. I apologize that I did not realize that all of these pages were not included in the disclosures—I had not caught that, but we will take our arguments up with the judge, if need be." (*Id.* at 2-3).

L.    **Request for Emergency Relief and Teleconference**

On July 26, 2024, Plaintiff requested emergency relief based upon the disclosure of the missing logbook pages. (Dkt. No. 180). The Court held a teleconference on the same day, at which Plaintiff requested a continuance of the trial and leave to file a motion for sanctions. (Dkt. No. 182, at 10). Defense counsel argued that the incident allegedly occurred on Plaintiff's transfer from SHU to general population, and that this transfer occurred on July 13, 2015, a date when Defendant was not working. (*Id.* at 4). Defendant further argued that there is no prejudice because Plaintiff knew, from time cards provided in connection with the summary judgment motion, that Defendant was working in the SHU on July 12, 2015. (*Id.* at 5, 13). Plaintiff responded that he had originally described the incident as having occurred on July 12, 2015, and Defendant's failure to provide the July 12, 2015 logbook caused him to amend his complaint, changing the date to on or before July 13, 2015. (*Id.* at 6-7). Plaintiff argued that the July 12, 2015 SHU logbook revealed that Defendant was working in the frisk room, where Plaintiff alleges the assault occurred. (*Id.* at 14). Plaintiff argued that his trial strategy concerning the date of the incident, both on what he will try to prove and on what he anticipates on cross-examination concerning the amended complaint, would be "monumentally" affected. (*Id.* at 14-17). The Court granted Plaintiff's request for a continuance and leave to file a motion for sanctions; trial is now set for November 18, 2024. (*Id.* at 19-20).

III.    **LEGAL STANDARD**

"A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). Discovery sanctions "serve a three-fold purpose: (1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the Court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general." *Grammar v.*

*Sharinn & Lipshie, P.C.*, No. 14-cv-6774, 2016 WL 525478, at *2, 2016 U.S. Dist. LEXIS

15235, at *7 (S.D.N.Y. Feb. 8, 2016) (citing *Cine Forty-Second Street Theatre Corp. v. Allied

Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)). A court "has broad discretion to

impose sanctions as is just, including an order (A) designating certain facts be taken as

established; (B) refusing the disobedient party from introducing evidence or claims; (C) striking

pleadings, staying the litigation until the obligation is satisfied, dismissing the action, or of

default; (D) of contempt against the disobedient party; and (E) to produce a person for

examination." *Abreu v. City of New York*, 208 F.R.D. 526, 529 (S.D.N.Y. 2002) (citing Fed. R.

Civ. P. 37(b)(2); *Friends of Animals Incorporated v. United States Surgical Corp.*, 131 F.3d 332,

334 (2d Cir. 1997)).

Rule 37(b)(2)(A) provides that "[i]f a party . . . fails to obey an order to provide or permit

discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P.

37(b)(2)(A). Where "the nature of the alleged breach of a discovery obligation is the non-

production of evidence, a district court has broad discretion in fashioning an appropriate

sanction, including the discretion to delay the start of a trial (at the expense of the party that

breached its obligation) . . . or to proceed with a trial and give an adverse inference instruction."

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

"Even in the absence of a discovery order, a court may impose sanctions on a party for

misconduct in discovery under its inherent power to manage its own affairs." *Id.* at 106-107; *see

also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("It has long been understood that

'[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their

institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to

the exercise of all others.'" (quoting *United States v. Hudson*, 11 U.S. 32, 33 (1812))).

Courts in this Circuit generally consider four factors when considering a Rule 37 motion for sanctions, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). These factors "are not exclusive, and they need not each be resolved against" a party to warrant sanctions. *Icon Int'l, Inc. v. Elevation Health LLC*, No. 22-cv-4304, 2024 WL 4098890, at *5, 2024 U.S. Dist. LEXIS 160488, at *18 (S.D.N.Y. Sept. 6, 2024) (citing *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)). And while prejudice to the moving party "may also be a significant consideration," it is "not an absolute prerequisite in all circumstances." *Brevard v. Schunk*, No. 18-cv-00042, 2020 WL 374563, at *5, 2020 U.S. Dist. LEXIS 11089, at *16 (N.D.N.Y. Jan. 23, 2020) (quoting *Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 319 F.R.D. 122, 129 (S.D.N.Y. 2016)); *see also Martinez v. City of New York*, No. 16-cv-79, 2018 WL 604019, at *22, 2018 U.S. Dist. LEXIS 13409, at *67 (E.D.N.Y. Jan. 24, 2018) ("The absence of prejudice is given little weight, even though its presence tilts the scales heavily in favor of sanctions, because both the Second Circuit and the Supreme Court 'have consistently rejected the "no harm, no foul" standard for evaluating discovery sanctions[.] Although one purpose of Rule 37 sanctions may in some cases be to protect other parties to the litigation from prejudice resulting from noncompliance with discovery obligations, Rule 37 sanctions serve other functions unrelated to the prejudice suffered by individual litigants.'" (quoting *Southern New England Tel. Co.*, 624 F.3d at 148-49) (internal quotations omitted)).

## IV.    DISCUSSION

### A.    Defendant's Obligation to Disclose the Logbook Evidence

As a preliminary matter, the Court must determine whether Defendant failed "to obey an order to provide or permit discovery." *See* Fed. R. Civ. P. 37(b)(2)(A). Rule 26(a)(1)(B)(iv) explicitly "exempt[s] from initial disclosure[s]" actions "brought without an attorney by a person in the custody of the United States, a state, or a state subdivision." *See* Fed. R. Civ. P. 26(a)(1)(B)(iv). This is action was originally brought by Plaintiff *pro se* while he was incarcerated. As such, Defendants' initial discovery obligations were dictated by the MDSO rather than Rule 26.

The MDSO in this case required Defendants to produce "copies of all documents and other materials in the care, custody, or control of any defendant or the defendant's employer . . . related to the claims or defenses in the case. Where applicable, such documents and materials shall include those documents and materials described in Attachment A hereto. In the cases listed in Attachment A hereto, provision of the documents and materials described therein shall constitute presumptive compliance with this Order." (Dkt. No. 23, at 2). The MDSO further provided that the parties "have a continuing duty to disclose to opposing parties any documents and information within the scope of this Order which are discovered or obtained after any initial disclosures under this Order are made." (*Id.* at 3).

Attachment A requires that the aforementioned disclosures "shall in all cases include relevant reports of completed investigation by a defendant's employer," and lists a specific set of required disclosures in excessive force cases: "Photographs; unusual incident reports; use-of-force reports; disciplinary charges; records (including transcripts) of disciplinary hearings; determinations of disciplinary charges and appeals therefrom; videotapes and/or audiotapes, and

medical records concerning treatment for any injuries allegedly received by the plaintiff as the

result of the incident(s) alleged in the complaint." (*Id.*, at 7).

Plaintiff asserts that Defendant breached his obligation under the MDSO when he

"omitted material pages from the logbook records." (Dkt. No. 183-1, at 12). Plaintiff argues that

Defendant obtained a copy of the logbook for the month of July, 2015, "as part of his document

collection efforts in compiling his Mandatory Disclosures." (*Id.* at 12-13). Plaintiff notes that

Defendant filed logbook pages for July 13, 2015, as part of its Motion for Summary Judgment.

(*Id.*) (citing Dkt. No. 47-6). Attached to these logbook pages is a certification that the documents

are a "true and exact . . . Copy of Log Book-H2 Block & Watch Commander dated 7/10/15-

7/31/15[.]" (*Id.*) (citing Dkt. No. 47-6, at 1). The certification for these pages is notarized and

dated July 19, 2017. (*Id.*) (citing Dkt. No. 47-6, at 1). While Plaintiff correctly points out that this

date is very shortly after the MDSO was issued on July 14, 2017, the certification concerns the

logbooks for the H2 Block & the Watch Commander, not the SHU logbook. (Dkt. No. 47-6, at

1).

Defendant replies that he "had no duty to produce the July 12, 2015 logbook pages at

issue here." (Dkt. No. 185-6, at 15). Instead, Defendant argues that the MDSO required him to

"turn over records 'related to the claims or defenses in this case,' and does not make any specific

reference to the disclosure of logbooks." (*Id.*). Defendant also notes that "Plaintiff never served

Defendant with discovery demands nor made any requests for Defendant's production of

logbook pages," nor did he make "any motions to compel," nor did his *pro bono* trial counsel

move to compel any discovery after their appointment. (*Id.* at 15-16). In an email to Plaintiff's

counsel, Defendant's counsel described the exclusion of the July 12, 2015 SHU logbook pages as

a "relevance determination" made by prior counsel (*See* Dkt. No. 183-9, at 2). But defense

counsel didn't "see the regretful late disclosure as problematic," because "these pages do not contain any information that proves or disproves any material fact in the case." (*Id.*). Defendant continues to argue in his brief that the pages "are not relevant to the dispensation of the claim in this lawsuit." (Dkt. No. 185-6, at 16).

The Court finds Defendant's argument wholly unpersuasive. Whether or not Defendant was obligated to produce *any* logbook pages, the fact remains that Defendant produced *some* logbook pages in his mandatory disclosures. (*See* Dkt. No. 183-3, at 20-21). Evidently, Defendant determined that he must disclose *some* portion of the logbook to comply with the MDSO. Having made such a determination, Defendant offers no plausible explanation for why he would disclose the SHU logbook pages for July 11, 2015, and July 13, 2015, but omit July 12, 2015 – when, at the time the disclosures were served, the operative complaint alleged that Defendant assaulted Plaintiff on July 12, 2015. (Dkt. No. 11, at ¶ 22, 27, 33).

Defendant's argument that the July 12, 2015 SHU logbook pages "are not relevant to the dispensation of the claim in this lawsuit" is equally unavailing. (Dkt. No. 185-6, at 16). Even in Plaintiff's Second Amended Complaint, Plaintiff alleges that (1) Officer Borden was his assailant, and (2) the assault occurred "on or about July 13, 2015," (Dkt. No. 38, at ¶ 16), "prior to July 13, 2015," (*id.* at ¶ 17), "prior to that occasion on July 13, 2015," (*id.* at ¶ 18), and "prior to July 13, 2015," (*id.* at ¶ 19). Defendant's assertion that "Plaintiff changed the date of the alleged incident from July 12, 2015 *to July 13, 2015*" is misleading and incorrect. (Dkt. No. 185-6, at 8) (emphasis added). Moreover, the Court denied summary judgment in favor of Defendant because "Plaintiff's deposition testimony and the grievance records raise a factual question regarding whether Officer Borden was present on the day of the alleged assault." (Dkt. No. 71, at

7). And on February 9, 2024, Defendant himself identified the SHU logbook pages from July 12 and July 13, 2015 as a trial exhibit. (Dkt. No. 148, at 6, Exhibit D-23).

"Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence[.]" Fed. R. Evid. 401. Evidence showing that Plaintiff and Defendant were in the same place at the same time, on or about the date of an alleged assault, certainly tends to make the fact of the assault more probable. *See Johnson v. Doty*, No. 15-cv-7823, 2020 WL 1244236, at *2, 2020 U.S. Dist. LEXIS 46650, at *4 (S.D.N.Y. Mar. 16, 2020) (finding certain logbook evidence relevant to plaintiff's claims where logbook demonstrated the times defendant was "on duty or post" during relevant event). And the SHU logbook pages from July 12, 2015 indicate that the Defendant conducted frisks that day. (Dkt. No. 183-7, at 12-13). The SHU logbook from July 12, 2015 is clearly relevant.

Defendant has not provided any explanation for producing the SHU logbook for July 11th and July 13th but omitting the logbook for July 12th. Nor has Defendant explained why the July 12th logbook, which he himself marked as a trial exhibit was not discoverable as a document "related to the claims or defenses in the case." Having produced the SHU logbook for July 11th and July 13th, the Court finds that Defendant was obligated to produce the logbook pages relevant to the date of the alleged assault – July 12th.[4] Therefore, the Court holds that Defendant's failure to disclose the July 12, 2015 SHU logbook pages was a violation of the MDSO.

---

[4] In a footnote, the MDSO instructs the parties that "If any document, or any portion thereof, otherwise required to be disclosed is withheld for any reason, defense counsel shall (a) obtain a complete copy of any such document and retain the document in counsel's office until the conclusion of litigation, and (b) serve a log in conformity with Fed. R. Civ. P. 26(b)(5) identifying any withheld document and the grounds upon which it has been withheld. (Dkt. No. 23, at n.1). The Court notes that Defendant has not argued that the July 12, 2015 pages of the logbook were withheld for any reason other than previous counsel's determination that they were not relevant.

B.    **Willfulness**

The first factor the Court must consider in assessing Plaintiff's motion for sanctions is

Defendant's "willfulness" or "reason for noncompliance." *See Agiwal*, 555 F.3d at 302. "Non-

compliance with a court's discovery order is willful when the order is clear, the party understood

the order, and the failure to comply is not due to factors beyond the party's control." *Martinez*,

2018 WL 604019, at *23, 2018 U.S. Dist. LEXIS 13409, at *68.

At oral argument, defense counsel could not explain the exclusion of the July 12, 2015

SHU logbook pages, and continued to argue that the logbook pages are not relevant. And in his

briefing, Defendant has reiterated his position that he was not obligated to produce the logbook

pages. (Dkt. No. 185-6, at 6).

Defendant's failure to disclose the logbook was willful; Defendant told Plaintiff that

Defendant's previous counsel made a "relevance determination," suggesting the intentional

exclusion of SHU logbook entries for July 12, 2015. (*See* Dkt. No. 183-9, at 2). Defense counsel

does not argue that she did not understand the order, or that the order was unclear. *See Martinez*,

2018 WL 604019 at *23, 2018 U.S. Dist. LEXIS 13409, at *68. Nor does Defendant argue that

the exclusion was a "mere oversight." *See Nieves v. City of New York*, 208 F.R.D. 531, 535

(S.D.N.Y. 2002) (noting that dismissal is an appropriate sanction only "where the noncompliance

is due to willfulness, bad faith, fault or gross negligence rather than inability to comply or mere

oversight.") (collecting cases). Indeed, the fact that the logbook pages for July 11, 2015 and July

13, 2015 are marked with consecutive Bates numbers suggests the exclusion was intentional.

(*See* Dkt. No. 183-3, at 20-21).

Defendant argues in the alternative that,"[i]n the event the Court disagrees that Defendant

was not required to turn over the July 12, 2015 logbook pages, it is submitted that Defendant's

failure to disclose the logbook pages was not willful and at no time did Defendant act in bad

faith." (Dkt. No. 185-6, at 17). Defendant explains that the current AAG was not involved in the exchange of discovery, and at the time of her email exchange with Plaintiff's trial counsel, she "was under the belief" that her trial exhibits "consisted of the same pages that had been previously turned over to Plaintiff as part of Defendant's Mandatory Disclosures." (*Id.*).

While the Court accepts that representation, it is noted that Plaintiff's trial counsel specifically asked Defendant's current counsel on May 5, 2023 about "discovery items" it "believe[d] may exist," including "officer shift documentation for 7/12 and 7/13"; "[a]ny documents reflecting [Plaintiff]'s whereabouts on 7/12," and [a]ny documents reflecting the statement . . . from Officer Borden stating that 'he did work on that date in SHU,'" (Dkt. No. 183-5, at 6-7). Defendant's current counsel never made any representation that these documents did not exist, (Dkt. No. 185-6, at 11), but apparently never noticed the discrepancy between its mandatory disclosures and the trial exhibits, originally identified in February 2024 – even when Plaintiff's trial counsel inquired about discovery that counsel believed "may exist." (*See* Dkt. No. 183-5, at 5).

Together, (1) prior defense counsel's original decision to intentionally exclude a critical logbook page, (2) Defendant's failure to disclose the logbook pages when prompted by trial counsel, and (3) Defendant's continued insistence that the logbook pages are not relevant, rises to the level of "willfulness . . . rather than inability to comply or mere oversight." *See Nieves*, 208 F.R.D. at 535. *Cf. Knox v. United States*, No. 12-cv-01741, 2016 WL 4033086, at *11, 2016 U.S. Dist. LEXIS 97749, at *34 (D. Conn. July 27, 2016) (declining to find willfulness where plaintiff's new counsel argued that previous counsel "improperly, inadequately and ineffectively represented her" and that "discovery abuse was unaware and unintentional by plaintiff").

21

### C.    Duration of Noncompliance

The Court must also consider the duration of Defendant's noncompliance with the

MDSO. *See Agiwal*, 555 F.3d at 302. "Periods of non-compliance as brief as a few months have

been held to weigh in favor of dispositive sanctions." *Martinez*, 2018 WL 604019, at *28, 2018

U.S. Dist. LEXIS 13409, at *87. *See also Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d

Cir. 2009) (affirming dismissal under Rule 37 where party violated discovery orders for three

months, where party deliberately and persistently violated orders to produce documents and

appear for deposition); *Icon Int'l, Inc.*, 2024 WL 4098890, at *10, 2024 U.S. Dist. LEXIS

160488, at *30 (weighing in favor of dismissal where plaintiff violated discovery orders for

approximately four months). One court found duration weighed in favor of dismissal where, "if

not for [the opposing party] conducting its own investigation," previously undisclosed

information "might have never been discovered." *Knox*, 2016 WL 4033086, at *12, 2016 U.S.

Dist. LEXIS 97749, at *35.

Defendant served its "mandatory pretrial disclosures," including the July 11 and 13, 2015

logbook pages, on September 12, 2017. (Dkt. No. 28-1, at 1). Defendant did not provide the July

12, 2015 logbook pages until July 22, 2024. (Dkt. No. 183-6, at 2). Defendant's noncompliance

lasted nearly seven years. However, the Court accepts that Defendant's current counsel believed

Plaintiff was already in possession of the logbook pages. (Dkt. No. 185-6, at 17). Defendant has

not deliberately and persistently failed to respond multiple discovery orders. *Cf. Embuscado*, 347

F. App'x at 701. As such, this factor weighs against sanctions.

### D.    Efficacy of Lesser Sanctions

The final factor the Court must consider is whether lesser sanctions than a default would

be effective in remedying the violation and deterring future violations. *See Icon Int'l, Inc.*, 2024

WL 4098890, at *10, 2024 U.S. Dist. LEXIS, at *32 ("[A] court should always seek to impose

22

the least harsh sanction that will remedy the discovery violation and deter such conduct in the future." (quoting *Farmer v. Hyde Your Eyes Optical, Inc.*, 2015 WL 2250592, at \*8, 2015 U.S. Dist. LEXIS 62904, (S.D.N.Y. May 13, 2015))). Where noncompliance is "deliberate and persistent," lesser sanctions may be inappropriate. *See id.* (citing *Embuscado*, 347 F. App'x at 701).

Plaintiff contends that default judgment is "the proper sanction to remedy Defendant's Rule 37 violation," because Defendant "acted with gross negligence and disregarded his discovery obligations." (Dkt. No. 183-1, at 22). Defendant replies that "[a]t no point did Defendant, or his counsel, willfully disobey a court order, act in bad faith, or act through fault." (Dkt. No. 185-6, at 20). Further, Defendant notes that it is "well settled that a court must provide sufficient notice in the form of warnings to the offending party before entering dispositive sanctions, including a default judgment." (*Id.*).

Dismissal or default judgment pursuant to Rule 37 is a "drastic remedy," and "generally to be used only when the district judge has considered lesser alternatives." *S. New England Tel. Co.*, 624 F.3d at 144. Dismissal is appropriate only "where the noncompliance is due to willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight." *Nieves*, 208 F.R.D. 535. After considering the four factors under *Agiwal*, the Court declines to enter a default judgment against Defendant.

Here, the Court has found willfulness. *See S. New England Tel. Co.*, 624 F.3d 123, 147-48 (upholding district court's default judgment, while noting that defendants acted willfully and in bad faith when they "failed to provide a good-faith explanation for their neglect in producing financial documents that clearly were the subject of the court's discovery orders").

But unlike other cases in which a district court employed a default judgment sanction, Defendant has not been "deliberate and persistent" in its defiance of discovery orders. *Cf. Embuscado*, 347 F. App'x at 701. While it is true that Defendant has deliberately withheld the July 12, 2015 logbook pages for the duration of the case, Plaintiff is now in possession of the missing documents, the Court granted Plaintiff a continuance to prepare for trial with the new information, and Plaintiff has not cited to any other discovery violation.

Moreover, a court must give a disobedient party sufficient notice before entering a default judgment. *See Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 450-51 (2d Cir. 2013); *Ramgoolie v. Ramgoolie*, 333 F.R.D. 30, 38 (S.D.N.Y. 2019) (affirming default judgment against defendant where defendant failed to comply with discovery orders after two conferences with the court, magistrate invited plaintiff to make an application for sanctions, and issued a final order that "directed defendant to personally search for and produce responsive documents"); *see also Manta Indus. Ltd. v. L.*, No. 16-cv-8308, 2024 WL 3755559, at *6, 2024 U.S. Dist. LEXIS 142565, at *15 (S.D.N.Y. Aug. 12, 2024) (finding three separate court orders were sufficient notice to represented defendants that default judgment "could be a consequence"). Here, Defendant never received a warning that sanctions were imminent.[5] As Defendant points out, there was no discovery beyond Defendant's mandatory disclosures in this case; neither Plaintiff nor his appointed trial counsel ever served Defendant with any discovery demands, made requests for production, nor made any motions to compel discovery. (Dkt. No. 185-6, at 9-10). *See Case v. Clivilles*, No. 12-cv-8122, 2016 WL 5818577, at *3, 2016 U.S. Dist. LEXIS 138129, at *9 (S.D.N.Y. Oct. 4, 2016) (noting that *pro se* litigants are "nonetheless, expected to make

---

[5] Plaintiff claims that the MDSO put the Defendant "on notice of the existence of [Rule 37], which applies equally to all parties in this litigation." (Dkt. No. 183-1, at 26). The language of the MDSO says that "failure of the plaintiff(s) to attend, be sworn, and answer appropriate questions may result in sanctions, including dismissal of the action pursuant to Fed. R. Civ. P. 37." (Dkt. No. 23, at 5). The language of the MDSO is not a clear warning to Defendant.

efforts to comply with the procedural rules of the [c]ourt") (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).

Here, Defendants were never warned, and for the reasons discussed in greater detail below, the Court finds that lesser sanctions would be effective to remedy the discovery violation in this case. Therefore, the Court declines to enter a default judgment against Defendant.

### E.    Preclusion

In the alternative, Plaintiff requests that the Court order evidentiary sanctions "to correct for the prejudice created by Defendant's actions."[6] (Dkt. No. 183-1, at 26). First, Plaintiff requests that "the Court preclude the Defendant from using the defense that he was not there on the day of the assault and from referencing his 'regularly scheduled day off' on July 13th, which he raised for the first time at Summary Judgment." (*Id.*). Plaintiff also requests that the Court "exclude his deposition transcripts as evidence at trial and preclude Defendant from using them for any purpose." (*Id.*, at 27).

"Preclusionary orders ensure that a party will not be able to profit from its own failure to comply." *Cine Forty-Second St. Theatre Corp.*, 602 F.2d at 1066. While an order "precluding a party from presenting evidence in opposition to it is strong medicine, such orders are necessary on appropriate occasion to enforce compliance with the discovery rules and maintain a credible deterrent to potential violators." *Daval Steel Prod., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991). Courts consider preclusion an "extreme sanction," and are obligated to "consider less drastic responses" before precluding documentary

---

[6] Plaintiff claims that "Defendant's Opposition does not contest Plaintiff's alternative request for evidentiary sanctions, and therefore concedes it." (Dkt. No. 186, at 12-13). But Defendant clearly argues in its brief against "imposition of sanctions against Defendant pursuant to [Rule 37]." (Dkt. No. 185-6, at 13). While Defendant did not specifically address Plaintiff's alternative requests in his brief, the Court declines to read this omission as a concession.

evidence or testimony. *Brevard*, 2020 WL 374563, at *5, 2020 U.S. Dist. LEXIS 11089, at *16

(quoting *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988)).

Courts consider four factors when deciding whether preclusion would be appropriate:

"(1) the party's explanation for the failure to comply with the discovery [requirement]; (2) the

importance of . . . the precluded [evidence]; (3) the prejudice suffered by the opposing party as a

result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147,

157 (S.D.N.Y. 2012) (alterations in original) (quoting *Softel, Inc. v. Dragon Medical & Scientific*

*Communications, Inc.*, 118 F.3d 955, 961 (2d Cir.1997)). "A finding of bad faith is not required,

and delay resulting from neglect is sufficient for preclusion." *Emmpresa Cubana Del Tabaco v.*

*Culbro Corp.*, 213 F.R.D. 151, 159 (S.D.N.Y. 2003) (citing *Wolak v. Spucci*, 217 F.3d 157, 161

(2d Cir.2000)).

The Court has already considered Defendant's explanation for its failure to produce the

July 12, 2015 logbooks and found it unpersuasive. But the Court has also granted a continuance

in this case, and Plaintiff has received almost four additional months to review the newly

disclosed logbook evidence and prepare for the new trial date. And, in every case Plaintiff cites

in support of preclusion, the evidence to be precluded is the evidence that was untimely

disclosed. *See Haas v. Delaware & Hudson Ry. Co.*, 282 F. App'x 84 (2d Cir. 2008) (excluding

plaintiff's affidavit where plaintiff failed to timely identify affiant); *Am. Friends of Yeshivat Ohr*

*Yerushalayim, Inc. v. United States*, No. 04-cv-1798, 2009 WL 1617773, 2009 U.S. Dist. LEXIS

47986 (E.D.N.Y. June 9, 2009) (precluding ledger and checks that were not produced during

discovery); *Briese Lichttechnik Vertriebs GmbH v. Langton*, No. 09-cv-9790, 2011 WL 280815,

2011 U.S. Dist. LEXIS 6340 (S.D.N.Y. Jan. 10, 2011) (precluding defendants from introducing

documents not disclosed during discovery). Here, Plaintiff does not seek exclusion of the July 12, 2015 logbook pages.

Defendant asserts that his primary argument at trial will be (1) that the alleged assault occurred when Plaintiff was moved from SHU to general population, (2) that "the evidence will show that Plaintiff was moved [from the SHU to general population] on July 13, 2015," and (3) "[t]he evidence will also show that Borden was not working at [the Facility] on July 13, 2015." (Dkt. No. 152, at 8). Precluding this argument would cause Defendant significant prejudice, and it would likely confuse the jury; the parties do not dispute that Defendant had a regularly scheduled day off on July 13, 2015, and Plaintiff has consistently alleged that he was assaulted when an officer took him out of the SHU. (*See* Dkt. Nos. 185-2, at 8-9; 1, at 5; 11, at ¶ 22; 38, at 6).

Given that preclusion is an "extreme sanction," and that the Court has already continued the trial to allow Plaintiff time to consider the logbook evidence, the Court declines to preclude Defendant from testifying that he had a regularly scheduled day off on July 13th, 2015. *See Brevard*, 2020 WL 374563, at *9, 2020 U.S. Dist. LEXIS 11089, at *25 (declining to preclude untimely disclosed evidence because preclusion is an extreme sanction, and the Court had already continued the trial to provide plaintiff additional time to prepare). The Court will, however, grant Plaintiff's request for preclusion to preclude Defendant from cross-examining Plaintiff regarding the discrepancy in his deposition or in the complaints concerning the date of the incident. In light of Plaintiff's assertion that he changed the date in his complaint, from July 12, 2015, to on or about July 13, 2015, following the mandatory disclosures, which failed to include the SHU logbook entries for July 12, 2015, the Court finds that precluding Defendant from cross-examining Plaintiff about this discrepancy is a fair and reasonable means of correcting the prejudice cause by the failure to disclose the July 12, 2015 logbook entries. Defendant admitted at oral argument that this preclusion would cause no prejudice to his case.

### F.    Adverse Inference Instructions

Plaintiff requests that "the Court order an adverse inference instructions [sic] in favor of Plaintiff stating that (1) any missing evidence, such as video footage, photographs, or other items identified in Plaintiffs' May 2023 emails to Defendant, should be construed as harmful to Defendant's case, and (2) any alleged inconsistencies regarding Mr. Fredericks' testimony about the events at issue are attributable to the Defendant's 7-year delay in producing the complete logbook record." (Dkt. No. 183-1, at 26-27).

When a party seeks an adverse inference instruction "on the basis that the evidence was not produced in time for use at trial, the party seeking the instruction must show (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp.*, 306 F.3d at 107. Where evidence was untimely produced, "the negligent party should sustain liability for breaching its discovery obligations where such breach causes injury, but the moving party should not obtain a windfall for uncovering evidence that would have made little difference in the underlying case." *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 125 (S.D.N.Y. 2007). "Even a permissive adverse inference instruction is a severe remedy, as it informs the jury of a party's potential misconduct, which 'may be difficult for the sanctioned party to overcome.'" *Johnson v. Perry*, No. 15-cv-403, 2018 WL 623574, at *3, 2018 U.S. Dist. LEXIS 15302, at *8 (S.D.N.Y. Jan. 30, 2018), *aff'd*, 763 F. App'x 81 (2d Cir. 2019) (quoting *DeCastro v. Kavadia*, 309 F.R.D. 167, 182 (S.D.N.Y. 2015). Moreover, "courts are reluctant to impose adverse inferences as a sanction where the evidence is ultimately produced." *Icon Int'l, Inc.*, 2024 WL 4098890, at *15, 2024 U.S. Dist. LEXIS 160488, at *48 (collecting cases).

### 1.     Missing Evidence

Plaintiff requests an instruction that "any missing evidence, such as video footage, photographs, or other items identified in Plaintiffs' May 2023 emails to Defendant, should be construed as harmful to Defendant's case. (Dkt. No. 183-1, at 26-27). However, nothing in the record suggests any other evidence is missing. Neither Plaintiff nor Defendant have identified additional items that are unaccounted for. As such, the Court declines to issue this adverse inference instruction. *See Brevard*, 2020 WL 374563, at *11, 2020 U.S. Dist. LEXIS 11089, at *31-32 (declining to issue adverse inference instruction where there was "no indication" that video or other records were destroyed, or that the defendants "failed in their diligence to locate them").

### 2.     Alleged Inconsistencies

Plaintiff also requests an instruction that "any alleged inconsistencies regarding Mr. Fredericks' testimony about the events at issue are attributable to the Defendant's 7-year delay in producing the complete logbook record." (Dkt. No. 183-1, at 26-27). The Court declines to attribute any alleged inconsistency in Mr. Fredericks' testimony to the delayed production of the logbook evidence; such an instruction would be overbroad. It would also prejudice Defendant because it may alert the jury to Defendant's "potential misconduct." *See Perry*, 2018 WL 623574, at *3, 2018 U.S. Dist. LEXIS 15302, at *8. The Court believes that the preclusion ruling above is adequate to address potential inconsistencies concerning the date of the incident.

Plaintiff has not pointed to a single case in which a court in our Circuit granted an adverse inference instruction when the missing evidence was ultimately, albeit belatedly, produced in its entirety. Plaintiff's citation to *Reilly v. Natwest Markets Grp. Inc.* is inapposite. 181 F.3d 253, 268 (2d Cir. 1999). In *Reilly*, the court affirmed an adverse inference instruction where a defendant failed to produce files until "the eleventh hour," *and* the plaintiff showed at

trial that those files had been "sanitized." *Id.* With the logbook pages produced, the Court's

preclusion ruling, and the trial continued for nearly four months, and with no authority to the

contrary, the Court declines to issue an adverse inference instruction.

### G. Reopening Discovery

"A party seeking to reopen discovery bears the burden of establishing good cause."

*Leong v. 127 Glen Head Inc.*, No. 13-cv-5528, 2016 WL 845325, at *3, 2016 U.S. Dist. LEXIS

26666, at *9-10 (E.D.N.Y. Mar. 2, 2016) (internal citations omitted). Further, "discovery should

not be extended when there was ample opportunity to pursue the evidence during discovery." *Id.*

Courts apply a six-part test to determine whether to reopen discovery: "(1) whether trial is

imminent; (2) whether the request is opposed; (3) whether the non-moving party would be

prejudiced; (4) whether the moving party was diligent in obtaining discovery within the

guidelines established by the court; (5) the foreseeability of the need for additional discovery in

light of the time allowed for discovery by the district court; and (6) the likelihood that the

discovery will lead to relevant evidence." *Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*, No. 05-

cv-776, 2008 WL 4415263, at *3, 2008 U.S. Dist. LEXIS 73293, at *8-9 (E.D.N.Y. Sept. 24,

2008). Even where these factors are satisfied, a court may decline to reopen discovery "where 'it

deems the request to be based on speculation as to what potentially could be discovered.'"

*Pennsylvania Manufacturers' Ass'n Ins. Co. v. Riccelli Enterprises, Inc.*, No. 11-cv-1539, 2015

WL 12582794, at *14 (N.D.N.Y. Dec. 9, 2015), *aff'd*, 690 F. App'x 52 (2d Cir. 2017) (quoting

*Wright v. Eastman Kodak Co.*, 328 Fed.Appx. 738, 738-39 (2d Cir. 2009).

"In undertaking the good cause inquiry, the Court gives solicitude to [Plaintiff's] status as

a pro se litigant." *Langton v. Town of Chester*, No. 14-cv-9474, 2017 WL 6988708, at *5, 2017

U.S. Dist. LEXIS 229210, at *14 (S.D.N.Y. Sept. 26, 2017), *aff'd sub nom. Langton v. Town of*

*Chester Library Bd.*, No. 14-cv-9474, 2020 WL 2850898, 2016 U.S. Dist. LEXIS 138129

(S.D.N.Y. June 1, 2020). However, such solicitude "must be balanced with the understanding that pro se litigants are nevertheless expected to make efforts to comply with the procedural rules of the Court." *Id.* (quoting Case, 2016 WL 5818577, at \*3, 2016 U.S. Dist. LEXIS 138129, at \*9). *See also Tatintsian v. Vorotyntsev*, No. 16-cv-7203, 2021 WL 780139, at \*5, 2021 U.S. Dist. LEXIS 15874, at \*14 (S.D.N.Y. Jan. 27, 2021) (declining to re-open discovery where *pro se* defendants "were not diligent in bringing their discovery dispute to the [c]ourt").

Here, all six *Pharmacy* factors weigh against reopening: (1) Trial is not only imminent, but it has already been delayed; (2) Defendant opposes the motion; (3) Reopening discovery would further delay resolution of the case; (4) Plaintiff never served Defendant with any discovery demands, and thus was not "diligent" in seeking discovery; (5) There was no foreseeable need for additional or ongoing discovery; and (6) Plaintiffs have not articulated any specific, relevant evidence that further discovery might produce. *See Pharmacy, Inc.*, 2008 WL 4415263, at \*3, 2008 U.S. Dist. LEXIS 73293, at \*8-9. Plaintiff asserts that "it is possible that there are other relevant materials that Defendant has not disclosed that may or may not still exist." (Dkt. No. 183-1, at 28-29). This assertion is speculative, and the Court declines to reopen discovery because of Plaintiff's speculation. *See Pennsylvania Manufacturers' Ass'n Ins. Co.*, 2015 WL 12582794, at \*14.

### H.    Costs

Under Rule 37(b)(2)(C), the Court "must order the disobedient party . . . to pay the reasonable expenses . . . caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). Where a court finds that sanctions are warranted under Rule 37, "the court should endeavor to impose a sanction that will restore the parties to the position they would have occupied but for the breach of discovery obligations and deter future misconduct." *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D.

at 131–32. Appropriate monetary sanctions may include "payment of reasonable expenses . . . caused by the failure" to disclose. *Id.* (quoting Fed. R. Civ. P. 37(c)(1)).

Further, "[i]t is well-established that 'misconduct that causes a party to incur additional expenses is a form of prejudice that supports an award of sanctions pursuant to Rule 37(e).'" *Hughes v. City of N.Y.*, No. 18-cv-9380, 2021 WL 4295209, at *14, 2021 U.S. Dist. LEXIS 180064, at *36–37 (S.D.N.Y. Sept. 21, 2021) (quoting *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14-cv-1254, 2021 WL 1172265, at *5, 2021 U.S. Dist. LEXIS 59661, at *15–16 (S.D.N.Y. Mar. 29, 2021)). And where the disobedient party failed to produce evidence, "a district court has broad discretion in fashioning an appropriate sanction, including the discretion to delay the start of a trial (at the expense of the party that breached its obligation)[.]" *Residential Funding Corp.*, 306 F.3d at 107.

In considering whether to impose costs, the Court notes that the belated production of the July 12, 2015 log shortly before trial, greatly inconvenienced both the Court and Plaintiff's counsel. It disrupted the Court's trial calendar, and Plaintiff's counsel has submitted evidence of $6,624.85 counsel incurred in connection with the scheduled trial. Plaintiff is represented by *pro bono* trial counsel, who "have been put to the burden and expense of ferreting out the malfeasance and seeking relief from the Court." *See Hughes*, 2021 WL 4295209, at *14, 2021 U.S. Dist. LEXIS 180064, at *36–37 (quoting *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016)).

While the Court understands that present defense counsel was not involved in the initial discovery, and accepts defense counsel's representation that she believed the July 12th SHU log was included in the initial discovery, the Court has taken all of the circumstances here into account in considering the appropriate sanction. This includes defense counsels' prolonging of

32

the litigation on this issue by counsels' failure to recognize or address the issues Plaintiff raised about the belated production of this log, including Plaintiff's claims of prejudice; defense counsels' insistence that the log is not relevant, despite having himself identified the log as an exhibit to be used at trial; and defense counsels' repeated misrepresentations of the Plaintiff's claim as having occurred "on" July 13th. Having carefully considered all of submissions on this issue, the Court finds that an award of costs is appropriate. The Court finds that awarding costs against Defendant is appropriate to "deter future misconduct," and to restore Plaintiff's attorneys to the position they would be in but for Defendant's eleventh-hour disclosure of the July 12, 2015 logbook evidence. As such, the Court will impose costs on Defendant. Plaintiff provided evidence in support of his application for costs in his reply and appears to seek an award of costs in the total amount of $6,624.85. (See, e.g., Dkt. No. 186-1). Having granted the application, the Court will allow Defendant the opportunity to respond to the amount in supplemental briefing.

## V.     CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for sanctions, (Dkt. No. 183), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that Defendant shall bear the costs Plaintiff's counsel incurred in connection with the continuance of trial; and it is further

**ORDERED** that Defendants may submit, by November 4, 2024, objections to Plaintiff's request; and it is further

**ORDERED** that Plaintiff's motion for sanctions is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: October 21, 2024
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

33